**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY**, individually and as subrogee of **Jones Lang Lasalle Americas, Inc.** and **Merck Sharp & Dohme Corp.**, 1299 Zurich Way Schaumburg, Illinois 60196, | CIVIL ACTION NO.: |
| and | |
| **JONES LANG LASALLE AMERICAS, INC.** 200 East Randolph Drive Chicago, Illinois 60601 | **CIVIL ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| **GEMINI INSURANCE COMPANY** 7233 East Butherus Drive Scottsdale, AZ 85260, | |
| and | |
| **U.S. FACILITIES, INC.** 1835 Market Street, Philadelphia, PA 19103 | |
| Defendants. | |

## <u>CIVIL ACTION COMPLAINT</u>

AND NOW COMES the plaintiffs, AMERICAN GUARANTEE AND LIABILITY

INSURANCE COMPANY, individually and as legal and equitable subrogee of Jones Lang

Lasalle Americas, Inc. and Merck Sharp & Dohme Corp., and JONES LANG LASALLE

AMERICAS, INC., by and through its attorneys, Bodell Bove LLC, to file this Complaint for

declaratory and equitable relief, breach of contract, and civil damages, and in support thereof, set forth and aver the following:

## **PREAMBLE**

This matter arises out of workplace accident which occurred over a holiday weekend on December 1, 2019, when an employee of U.S. Facilities, Inc. ("USF"), who was assigned to monitor and record $CO_2$ usage at the Merck Sharp & Dohme Corp. ("Merck") North Wales, Pennsylvania campus, was injured.

At the time of this accident, USF was under a facilities services contract with Jones Lang Lasalle Americas, Inc. ("JLL"), on behalf of Merck, to provide best in class services at the Merck facilities. JLL directed USF, whose workers would be on site over the holiday weekend, to monitor and record the $CO_2$ usage at the Merck facility and, if necessary, to switch over a manifold—which is simply a lever to start a new already-in-place $CO_2$ cylinder. The training and written instructions that were provided to USF supervisors on the Wednesday before the start of the Thanksgiving holiday did not require the USF employees to physically move any of the heavy $CO_2$ cylinders; rather, USF was only requested to monitor the $CO_2$ usage, record the usage on a sheet posted in the $CO_2$ room, and apply the manifold lever to start a new tank of $CO_2$ if necessary.

Although USF supervisory personnel were given training and express instructions relative to the task USF agreed to perform, they failed to communicate or otherwise properly instruct its employee, Len Villanova ("Villanova"), regarding that limited task. Consequently, Villanova took it upon himself, or inferred from USF's misguided and inadequate instructions, that part of his job duties entailed moving or rearranging $CO_2$ tanks, and sustained injuries while doing so. Villanova and his wife, Karen, subsequently commenced a civil action styled *Leonard*

*Villanova and Karen Villanova, h/w v. Merck Sharp & Dohme Corp., Jones Lang LaSalle Americas, Inc., et al.*, in the Court of Common Pleas of Philadelphia County at November Term, 2021 No. 01064 (the "*Villanova* Lawsuit") to recover damages for the injuries he sustained in that accident.

USF's facilities services contract with Merck and JLL obligated USF to procure and maintain commercial general liability insurance, including coverage for bodily injury, with a $1 Million per occurrence limit naming JLL and Merck as additional insureds on a primary and non-contributing basis. Gemini Insurance Company ("Gemini") provided that commercial general liability insurance to USF, which included JLL and Merck as additional insureds on a primary and non-contributing basis. Hence, JLL and Merck provided prompt notice of the accident to USF, and requested a defense and indemnity under the Gemini policy insuring them for the loss.

Remarkably, Gemini simply ignored the tender by JLL and Merck and continued to ignore the tender even after the *Villanova* Lawsuit was filed. Some three and half (3½) years later, Gemini offered a baseless excuse why it had not assumed the defense of JLL and Merck, and then, on January 30, 2024, reversed course and admitted it had a duty to defend JLL and Merck on a primary and non-contributing basis in the *Villanova* Lawsuit—but still failed to do so.

Having been abandoned by Gemini, JLL and Merck turned to its own excess insurers to provide a defense for the *Villanova* Lawsuit and expended $200,000 in defense and indemnity costs, which should have been paid, exclusively, by Gemini. The *Villanova* Lawsuit ultimately proceeded to mediation and, despite notice to Gemini, it refused to settle the claims against JLL and Merck. Consequently, JLL and Merck settled the claims in the *Villanova* Lawsuit for $2,516,500 (the "Settlement Payment"), with JLL paying the balance of its eroding retention and

its excess insurers, ACE American Insurance Company ("ACE") and American Guarantee and Liability Insurance Company ("AGLIC"), advancing the balance of the settlement under reservation of rights.

JLL, individually, and AGLIC as its equitable and legal subrogee, now bring this action pursuant to the codified and common laws of the United States of America and the Commonwealth of Pennsylvania seeking, *inter alia*: (a) a declaration that Gemini was obligated to provide primary and non-contributing defense and indemnity coverage relative to the claims against JLL and Merck in the *Villanova* Lawsuit under Gemini Insurance Company Policy No. VNGP001522 ("Gemini Policy"); (b) recovery of all sums JLL advanced in connection with the defense of JLL and Merck in the *Villanova* Lawsuit, together with interest on those sums, from Gemini; (c) recovery of the $1 Million indemnity limit of the Gemini Policy on account of the Settlement Payment, together with interest on that sum, from Gemini; (d) recovery of all consequential damages sustained by JLL and AGLIC as a consequence of the material breaches by Gemini of the Gemini Policy, together with interest on those sums, from Gemini; and (e) the alternative recovery of all consequential damages sustained by JLL and AGLIC as a consequence of USF's material breach of the insurance requirements under the facilities services contract with JLL, together with interest on those sums, from USF.

## THE PARTIES

1.      Plaintiff American Guarantee and Liability Insurance Company ("AGLIC") is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.  AGLIC is authorized to

transact business and has transacted business in the Commonwealth of Pennsylvania, and is a citizen of New York and Illinois.

2.      Plaintiff, Jones Lang Lasalle Americas, Inc. ("JLL") is a property management company incorporated in the State of Maryland, with its principal place of business located at 200 East Randolph Drive, Chicago, Illinois 60601.  JLL is authorized to and regularly conducts business in the Commonwealth of Pennsylvania, and is a citizen of Maryland and Illinois.

3.      Beyond the individual claims advanced by JLL as more fully described in this complaint, AGLIC is the legal and equitable subrogee of all other rights and remedies available to JLL as more fully described in this complaint.

4.      Defendant, Gemini Insurance Company ("Gemini") is a Delaware corporation engaged in the insurance business with its principal place of business located at 7233 East Butherus Drive Scottsdale, Arizona 85260.  Gemini is a citizen of Delaware and Arizona.

5.      Gemini issued one of the insurance policies at issue in this case, Gemini Insurance Company Policy No. VNGP001522 (the "Gemini Policy"), to defendant, U.S. Facilities, Inc., in the Commonwealth of Pennsylvania.

6.      Defendant, U.S. Facilities, Inc. ("USF") is a contract facilities management company incorporated in the Commonwealth of Pennsylvania, with its principal place of business located at 1835 Market Street, Philadelphia, Pennsylvania 19103.  USF is a citizen of Pennsylvania.

7.      USF is a party to the Gemini Policy at issue in this case, and entered into a facilities services contract with JLL, on behalf of Merck Sharp & Dohme Corp. ("Merck"), at issue in this case, in the Commonwealth of Pennsylvania.

8.      Non-parties Len Villanova ("Villanova") and his wife, Karen Villanova, were the plaintiffs in the civil action styled *Leonard Villanova and Karen Villanova, h/w v. Merck Sharp & Dohme Corp., Jones Lang LaSalle Americas, Inc., et al.*, in the Court of Common Pleas of Philadelphia County at November Term, 2021 No. 01064 (the "*Villanova* Lawsuit").

9.      Mr. and Mrs. Villanova reached an arm's length mediated settlement of their claims against JLL and Merck in the *Villanova* Lawsuit for the sum of Two Million Five Hundred and Sixteen Thousand and Five Hundred Dollars and No Cents ($2,516,500.00) (the "Settlement Payment").

10.      At all times relevant, Gemini acted through its actual and ostensible agents, servants, workers, and employees.

11.      At all times relevant, USF acted through its actual and ostensible agents, servants, workers, and employees, including Villanova and his supervisors.

## JURISDICTION AND VENUE

12.      This court has original jurisdiction under 28 U.S.C. §1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13.      Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391 because, *inter alia*, the events or omissions giving rise to the claim took place within this District.  More specifically, but without limitation, the Gemini Policy is an insurance contract which was formed in this District, the material acts or omissions by Gemini in breach of that insurance contract took place in this District relative to the *Villanova* Lawsuit, which was filed and pending in this District, the defense and settlement of the *Villanova* Lawsuit, which are the subject of certain damages claims in this action, took place in this District, the USF facilities

6

services contract, which gives rise to the insurance obligations at issue in this case, was formed in this District, and the acts or omissions by USF, or those acting on its behalf, which caused the accident at issue in the *Villanova* Lawsuit took place in this District.

## FACTS COMMON TO ALL COUNTS

A.    **The *Villanova* Lawsuit**

14.    On November 12, 2021, Leonard Villanova and Karen Villanova commenced a personal injury action by the filing of a complaint styled *Leonard Villanova and Karen Villanova, h/w v. Merck Sharp & Dohme Corp., Jones Lang LaSalle Americas, Inc., Airgas, Inc., Airgas USA, LLC, Airgas – East, Inc.,* in the Court of Common Pleas of Philadelphia Count at November Term, 2021 No. 01064 (as noted *supra*, the "*Villanova* Lawsuit").  A true and correct copy of the Complaint filed in the *Villanova* Lawsuit is appended at **Exhibit "A"**.

15.    As alleged in the *Villanova* Complaint, "[o]n December 1, 2019, Plaintiff, Leonard Villanova, suffered severe permanent injuries while in the course and scope of his employment with U.S. Facilities at defendant, Merck Sharpe & Dohme Corp.'s 'North Wales 1' ('NW1') Building located at or in the immediate vicinity of 351 N. Sumneytown Pike, North Wales, PA 19454, or 770 Sumneytown Pike, West Point, PA 19486 (hereinafter 'Jobsite' or 'Premises')." *Villanova* Complaint ("Compl.") at ¶4.

16.    Plaintiffs allege that JLL "was regularly engaged as a property maintenance / management company, including managing and maintaining Merck medical laboratories which incorporated solid and/or liquid carbon dioxide ($CO_2$) in its processes in the course and scope of its regular business operations."  Compl. at ¶¶ 11-12; see also *id.* at ¶¶ 32, 101.

17.     Plaintiffs further allege that "[o]n December 1, 2019, Plaintiff, Leonard Villanova was working at the jobsite as a laborer, employed by U.S. Facilities, which was acting as a maintenance custodian for the incident Merck plant."  Compl. at ¶62.

18.     As discussed more fully *infra*, JLL, Merck's property manager, had previously entered into a Service Contractor Agreement on behalf of Merck with Villanova's employer, USF, to perform services at the Merck facility.  A true and correct copy of the relevant portions of the June 15, 2018 Service Contractor Agreement, as amended (the "USF Services Contract") is appended at **Exhibit "B"**.

19.     Under the terms of the USF Services Contract, USF was obligated to provide personnel to maintain various Merck sites including the Merck North Wales facility, and all such employees were required to be properly managed, trained, and supervised by USF:

> US Facilities provides Chief Engineers, supervisors, planners/schedulers, HVAC Technicians, Operators, Electricians, and General Maintenance Mechanics to maintain various Merck sites. All employees shall be properly qualified and trained as required by Merck and JLL. USF will provide management, supervision, training benefits and HR support for all their employees.

USF Services Contract at Exhibit A – Contract Duties, ¶3 On-site Labor.

20.     Villanova was performing services under the USF Services Contract at the time of the accident described in the *Villanova* Complaint.

21.     As alleged in the Complaint, "[o]n December 1, 2019, Plaintiff, Leonard Villanova, while acting within the course and scope of his employment for U.S. Facilities, and as he was directed by an agent and/or other representative of the defendant Merck or JLL[], was changing out an empty and/or malfunctioning $CO_2$ cylinder which was situated in or near the specialized rack … and used in the normal business operations of Merck on site, supplying the $CO_2$ into the laboratory ('the Work')."  Compl. at ¶64.

22.     As alleged, "[o]n December 1, 2019, Plaintiff attempted to perform the Work requested by one or more of the defendants, which he was never trained to do and was never warned of the foreseeable dangers associated with the $CO_2$ cylinders and the racks, when a cylinder was or became wedged causing Plaintiff to suffer serious personal injuries …"  Compl. at ¶89.

23.     Villanova directly attributes the accident, and his resulting injuries, to the failure of Merck, JLL and his employer to provide adequate training and instruction for the job USF had assigned him to perform.  *Id.* and see Compl. at ¶96 ("… Plaintiff and his coworkers were not trained on the Work they were asked to perform over Thanksgiving weekend in 2019 and it was therefore not safe or appropriate to request this without proper training, instructions and/or warnings."); ¶90 ("Any instructions provided to Plaintiff and Plaintiff's employer to perform this Work were wholly inadequate and lacked any warnings or guidance about the hazardous and/or dangerous condition that would foreseeably confront Plaintiff."); ¶99 ("Defendants, by and through their agents, ostensible agents, servants, borrowed servants, workmen and/or employees, breached their duties owed to Plaintiff by failing to provide safe equipment to the workers, failing to provide a safe jobsite, failing to ensure the workers were properly trained to use the proper equipment and perform the Work, failing to adequately inspect and monitor the conditions of the jobsite and the mechanical elements therein, failing to adequately inspect and monitor the Work being performed, and/or failing to enforce/establish practices and/or procedures to protect and/or warn workers of risks associated with the Work being performed at the jobsite.").

24.     The express allegations that Villanova was wholly unsuited for the work assigned by USF, USF's decision to place him in that position without adequate instruction, and Villanova's own decision to attempt to relocate the $CO_2$ cylinder while untrained and without

adequate instructions from his employer, directly implicated USF's acts or omissions and Villanova's own acts or omissions as a factual cause of the accident and resulting injuries.

25.     Villanova claims that JLL and Merck are vicariously liable for the acts and omissions of its "agents, ostensible agents, servants, borrowed servants, workmen and/or employees" which would necessarily include USF and its employees during the course of their operations for Merck and JLL, and otherwise directly liable in tort for failing to prevent the acts or omissions by USF (and those working on its behalf) which caused the accident.  Compl. at ¶¶46, 59-70, 77, 80, 84-86, 89, 98, 99, 105, 111-114, 125, and 126.

26.     Villanova alleges that JLL and Merck had a duty to supervise and provide appropriate management, training, and supervision over the work performed by USF and its employees, and to warn the plaintiff about the dangers associated with that work.  *Id.* at ¶¶59-70, 77, 84-86, 89, 98, 99, 111-113, 125.  Thus, according to Villanova, had JLL and Merck hired competent contractors or subcontractors, or properly managed, trained and supervised USF's work and adequately warned USF and its employees about the dangers inherent in that work, then USF and its employees, including Villanova, would not have engaged in the acts or omissions which caused the accident and Villanova's resulting bodily injury and damages.  *Ibid.*

27.     In sum, the factual allegations and claims in the *Villanova* complaint, if proven, clearly raised the possibility that Villanova's injuries were caused, in whole or in part, by USF's acts or omissions or the acts or omissions of those acting on USF's behalf, including but not limited to Leonard Villanova, or, alternatively, that JLL and Merck were vicariously liable for the accident and resulting injuries on account of the acts or omissions by USF and those acting on USF's behalf.

28.     The pleaded facts implicating the acts and omissions by USF and its employees as a cause of the accident were further developed during the course of discovery in the *Villanova* Lawsuit and became the focus of the liability and comparative liability contentions which would be addressed at trial.

29.     The discovery established that JLL requested USF, whose workers would be on site over the Thanksgiving holiday, to monitor and record the CO 2 usage and, if necessary, to switch over a manifold which is simply a lever to start a new already in-place tank if the tank that was hooked up to the manifold was running out of $CO_2$.  As explained in writing by JLL (Jim Gregg) to the USF Supervisor (Glenn Crawford):

> From: Gregg, Jim <jim.gregg@merck.com>
> Sent: Wednesday, November 27, 2019 11:10 AM
> To: Crawford, Glenn <glenn.crawford@merck.com>
> Cc: Blake, Michon <michon.blake@merck.com>
> Subject: NW1 CO2 manifold
>
> Thanks for stopping over today. As we discussed here are the steps that should be followed to change the CO2 cylinder.
>
> • Turn fan on to eliminate the chance of CO2 alarm being trigged
> • Manually switch manifold handle to opposite side to clear alarm light
> • Turn off empty cylinder
> • Slowly loosen line to disconnect cylinder (there will be a small amount of CO2 in the line)
> • Put cap on empty cylinder
> • Attach the line to the full cylinder (behind the empty)
> • Once tightened turn on the cylinder, pressure gauge will rise to around 800psi
>
> Also if your guys wouldn't mind filling out Kevin's sheet that would be helpful. They are attached to the cylinder (date/time changed, starting PSI)
>
> We appreciate your team's help.
>
> Jim

A true and correct copy of the November 27, 2019 11:10 AM email from JLL (Jim Gregg) to USF's Supervisor (Glenn Crawford) is appended at **Exhibit "C"**.

30.     The written instructions provided to USF supervisors on the Wednesday before the start of the Thanksgiving holiday did not require the USF employees, including Villanova, to physically move any of the $CO_2$ cylinders in the $CO_2$ Room.  *Id.*  USF was only requested to monitor the $CO_2$ usage, record the usage on a sheet posted in the $CO_2$ room and adjust the manifold lever to start a new tank of $CO_2$ if necessary.  *Id.*

31.     The USF supervisor, however, when he passed these instructions on to Villanova and other USF employees minutes later, without copying JLL, took it upon himself to add "there are six cylinders in the rack if you need one", unilaterally creating confusion over whether employees, such as Villanova, might need to physically move a $CO_2$ cylinder from another location as part of the job:

> From: Crawford, Glenn <glenn.crawfordPmerck.com>
> Sent: Wednesday, November 27, 2019 11:43 AM
> To: Barford, Stephen <stephen.barford@merck.com>; Bridges, Kevin
> <kevin.bridges@merck.com>; Doll, Scott <scott doll@merck.com>; Kostis ion, Mark
> <mark kostishion@merck.com>; Reese, Daniel <daniel reese@merck.com>; Villanova,
> Len <len.villanova@merck.com>
> Subject: FW: NW1 CO2 manifold
> Importance: High
>
> All,
>
> Please see CO2 cylinder changeover steps below.
> You will be required to change them out over the long weekend if needed.  **There are 2 full bottles behind the ones that are currently in use. If those go empty there should be 6 more in the rack to the right of them.**
>
> Glenn Crawford

A true and correct copy of the November 27, 2019 11:43 AM email from USF's Supervisor (Crawford) to Villanova (and others) (emphasis supplied) is appended as part of **Exhibit "C"**.

32.     If he had been copied on this email, Mr. Gregg would have told Mr. Crawford that the USF workers were not to move any of the $CO_2$ cylinders in the storage rack.  Gregg Notes of Testimony appended at **Exhibit "D"**.

33.     The added instruction by Crawford implied that USF employees might be expected to physically move the $CO_2$ cylinders in the storage rack and is indicative of USF's failure to properly communicate the parameters of the task assigned to its employees—a liability assigned by the plaintiff in the complaint to JLL and Merck.

34.     USF's failure to properly instruct its employees as to the limited tasks they were expected to perform ultimately led to the accident—when Villanova attempted to move one of the $CO_2$ cylinders in the storage rack and was injured doing so.

35.     USF's failure to properly instruct its employees as to the limited tasks they were expected to perform and Villanova's election to attempt to move one of the $CO_2$ cylinders in the storage rack when another full tank was already in place, were factual causes of the accident and the resulting injuries at issue in the *Villanova* Lawsuit.

36.     The principal defense liability expert, Angela Levitan, Ph.D., CPE, offered the opinion that the underlying accident resulted from the casual negligence by Villanova, and his employer, USF, as supported by these and other facts developed during discovery:

> Based upon a reasonable degree of scientific certainty, and the information received to date, I conclude the following:
> …
> 2.  Mr. Villanova was trained in the proper handling of compressed gas cylinders.
> 3.  Mr. Villanova was familiar with responding to alarms at the subject location but had not previously been asked to move any compressed gas cylinders.
> 4.  **Mr. Villanova, as a Central Utility Plant Operator was provided with instructions to perform the required task of switching over CO2 cylinders. This task did not require the movement of CO2 cylinders.**
> 5.  Mr. Villanova responded to a low CO2 alarm and successfully switched over a full cylinder for an empty cylinder located within the manifold rack.
> 6.  **There was no expectation or requirement for compressed gas cylinders to be moved during the execution of the job task required to be performed by Mr. Villanova. Mr. Villanova chose to engage in work that was outside the scope of the work tasks that he was required to perform.**
> 7.  Mr. Villanova attempted to move a cylinder weighing over 100 pounds without tilting it, spinning it, or rolling it as he was trained.
> 8.  **Mr. Villanova's actions, or lack thereof, were causative factors of the subject incident and his subsequent injuries.**

9. Jones Lang LaSalle provided verbal and written instructions that were adequate for the job task to be performed.

**10. It was the responsibility of U.S. Facilities to provide adequate training to Mr. Villanova, including necessary refresher training, regarding recognizing potential hazards.**

**11. U.S. Facilities failed to provide Mr. Villanova with an accurate representation of the instructions provided by Jones Lang LaSalle.**

**12. U.S. Facilities' actions, or lack thereof, were a causative factor of the subject incident.**

13. The job task required of Mr. Villanova presented a low-risk. A job safety analysis, beyond the instructions provided, was not required for the job task.

14. Jones Lang LaSalle's actions, or lack thereof, were not a causative factor of the subject incident.

…

<u>See</u> Ms. Levitan's December 4, 2023 expert report at page 11 (emphasis added), a true and correct copy of which is appended at **Exhibit "E"**.

37.     Based on this expert's opinion alone, Villanova's own causal fault (<u>i.e.</u>, his comparative negligence), and the inadequacies of the instructions, training and supervision by USF, would be squarely at issue at trial.

38.     Hence, Villanova's comparative fault, and the role the instructions given by USF's supervisor had in the leading him to undertake a task which was not part of the work USF was assigned by JLL to perform, would have been considered and ultimately decided by the jury at the trial of the *Villanova* Lawsuit.

**B.     The USF Services Contract**

39.     The USF Services Contract was formed on June 15, 2018 for the benefit of Merck (the "Owner") by JLL (the "Manager") and USF (the "Service Contractor"), and addresses contract services to be performed by USF at various Merck facilities through December 31, 2019, including Merck's facilities in North Wales, where the underlying accident occurred. <u>See</u> USF Services Contract (**Ex. "B"**) at recitals, Section 1, and Exhibit "A".

40.     The contracted services under the USF Services Contract are subject to the following duties on the part of USF to, *inter alia*, perform to a standard of care customary for

similar work, provide a competent and well trained on-site supervisor for performance of the

"Contract Duties" at all times when said Contract Duties are being performed, and insure the

safety of all persons on the property:

> From and after the Contract Commencement Date and until the Contract Expiration Date or earlier termination of this Agreement, Service Contractor shall timely and fully perform all of the Contract Duties set forth in Exhibit A which is attached hereto and incorporated by reference herein. Service Contractor further agrees to perform all of the Contract Duties in a good and workmanlike manner, and in accordance with industry standards established by those engaged in a business similar to that of Service Contractor in performance of the Contract Duties; and to pay for uniforms, labor, insurance premiums of any kind or description, sales taxes, salaries, federal and state employment taxes, any similar payroll taxes relating to employees of Service Contractor, and to obtain and pay for all applicable permits and governmental fees, licenses and inspections necessary to the performance of the Contract Duties and to otherwise comply with all governmental regulations pertaining to performance of the Contract Duties; and to uniform all employees, servants and agents to the subjective satisfaction of Manager; and to provide a competent and well trained on-site supervisor for performance of the Contract Duties at all times when said Contract Duties are being performed; and to maintain a continuing employee training program so as to insure maximum efficiency of performance of the Contract Duties and to insure the safety of all persons on the Property; and to keep the Property free from accumulation of waste materials or rubbish caused by Service Contractor's operations.

*Id.* at Section 2.

41. The USF Services Contract contemplated assignment of "additional work"

beyond the Contract Duties, *id.* at Section 4, and in all events required proper supervision,

training, and instruction by USF of its workforce:

> US Facilities provides Chief Engineers, supervisors, planners/schedulers, I-1VAC Technicians, Operators, Electricians, and General Maintenance Mechanics to maintain various Merck sites. All employees shall be properly qualified and trained as required by Merck and JLL. USF will provide management, supervision, training benefits and ER support for all their employees.

*Id.* at Ex. A ("Contract Duties"), ¶3.

42. Importantly, the USF Services Contract required USF to procure and maintain

additional insured coverage in favor of Merck and JL on a primary and noncontributing basis

with any insurance available to Merck and JLL including commercial general liability insurance, with limits not less than $1 Million per occurrence:

> Section 7.  Insurance.
>
> At all times while performing the Contract Duties, Service Contractor shall maintain, at its sole cost and expense, the insurance set forth in Exhibit C, attached hereto and incorporated by reference herein, from insurance companies and in a form reasonably satisfactory to Manager with limits of liability not less than stated in such Exhibit C. Manager shall have the right to inspect and review the policies in their entirety and shall be provided with copies upon request.

> 

EXHIBIT C - INSURANCE
INSURANCE REQUIREMENTS

> 1.  The Service Contractor shall evidence at least the following insurance coverage, provided that the amounts listed below will not act as a limitation on recovery from Service Contractor's insurance:
>
>      A.  Commercial General Liability
>
>      Commercial General Liability insurance on a form at least as broad as Insurance Services Office ("ISO") commercial general liability coverage "occurrence" form CG 00 01 04 13 or another "occurrence" form providing equivalent coverage, including but not limited to contractual liability coverage, independent contractor's liability, coverage for bodily injury (including death), property damage (including loss of use thereof), ongoing and completed operations, products liability, and personal and advertising injury, in the following amounts:
>
>      $1,000,000 Per Occurrence Limit
>      $2,000,000 General Aggregate Limit
>
>      This coverage shall be primary to Owner and Manager's coverage, and Owner and Manager's coverage shall be noncontributory.
>      …
>
> 2.  The Commercial General Liability and Commercial Automobile Liability policies shall include the following as additional insured, including their affiliates, officers, directors and employees.  Additional Insured endorsements CO 20 10 04 13 and CG 20 37 04 13 or their equivalent shall be utilized for the Commercial General Liability policy.  Please note that the spelling of these parties must be exactly correct or the Contract Duties will not be allowed to commence.
>
>      1.  Jones Lang LaSalle Americas, Inc.
>      2.  Merck. Sharp & Dohme Corp.

USF Services Contract at Section 7 and Exhibit C.

C.    **The Gemini Policy**

43.    Gemini issued Commercial General Liability Policy No. VNGP001522 (the "Gemini Policy") to USF, effective August 31, 2019 to August 31, 2020.  A copy of the Gemini Policy is appended at **Exhibit "F"**.

44.    The Gemini Policy has limits of $1 Million per occurrence, and includes a Coverage A (Bodily Injury and Property Damage Liability) grant that obligates Gemini to pay those sums a qualifying "insured" may become legally obligated to pay as damages because of "bodily injury" caused by an "occurrence" where that "bodily injury" occurs during the effective dates of the policy, and to defend "suits" alleging such damages:

SECTION I - COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ...
   ...
   b.   This insurance applies to "bodily injury" and "property damage" only if:

      (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2)  The "bodily injury" or "property damage" occurs during the policy period; and …

...

Gemini Policy at Commercial General Liability Coverage Form (CG 0001 (12/07)), Section I – Coverages, Coverage A, ¶1. Insuring Agreement.

45.    The definition of "insured", for purposes of the Gemini Policy's Coverage A

insuring agreement, is set forth in Section II (Who Is An Insured) of the coverage form which is

amended by the following endorsement:

> **Section II – Who Is An Insured** is amended to include as an additional insured the
> person(s) or organization(s) shown in the Schedule, but only with respect to liability for
> "bodily injury", "property damage" or "personal and advertising injury" caused, in whole
> or in part, by:
>
> 1.  Your acts or omissions; or
> 2.  The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the
> location(s) designated above.
>
> However:
>
> 1.  The insurance afforded to such additional insured only applies to the extent permitted
>     by law; and
> 2.  If coverage provided to the additional insured is required by a contract or agreement,
>     the insurance afforded to such additional insured will not be broader than that which
>     you are required by the contract or agreement to provide for such additional insured.

Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or

Organization Endorsement (CG 2010 (4/13)).

46.    The schedule to Additional Insured – Owners, Lessees or Contractors – Scheduled

Person or Organization Endorsement identifies the following persons and entities as additional

insureds:

> Any person or organization when you have agreed in a written and executed contract,
> prior to an "occurrence", that such person or organization be added as an additional
> insured on your policy.

Gemini Policy at Schedule, "Name of Additional Insured Person(s) or Organization(s)".

47.    Gemini's duty to defend and indemnify such qualifying additional insureds is not

contingent upon an actual tort claim being advanced against USF or an adjudication of USF's

liability in such a tort action but rather applies where USF is performing operations for the

additional insured and USF's acts or omissions, or the acts or omissions of those acting on its behalf, are a cause, in whole or in part, of the "bodily injury".

48.    The Gemini Policy expressly stipulates that the coverage afforded a qualifying insured is primary absent other primary insurance available to the insured:

> Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> a.  Primary Insurance
>
> This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. …

Gemini Policy at Commercial General Liability Coverage Form (CG 0001 (12/07)), Section IV., ¶4.a.

49.    The Gemini Policy further stipulates that where additional insured coverage is required by contract to be primary and non-contributing, the additional insured coverage under the Gemini Policy is primary and non-contributing with any other insurance available to an additional insured:

> PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION
>
> This endorsement modifies insurance provided under the following:
> Commercial General Liability Coverage Part
>
> The following is added to the Other Insurance Condition and supersedes any provision to the contrary:
>
> Primary And Noncontributory Insurance
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> (1) The additional insured is a Named Insured under such other insurance; and
> (2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

Gemini Policy at Endt. #14, Primary and Noncontributory - Other Insurance Condition Endorsement (CG 2001 (04/13)).

50.     The USF Services Contract, in effect and executed prior to the December 1, 2019 accident as issue in the *Villanova* Lawsuit, obligated USF ("you" under the Gemini Policy) to procure and maintain commercial general liability insurance, including but not limited to coverage for bodily injury, with at least a $1 Million per occurrence limit, and which includes JLL and Merck as additional insureds on a primary and non-contributing basis.  USF Services Contract at §7 and Exhibit "C" at ¶¶1.A and 2.

**D.     Excess Insurance Available to Merck and JLL**

51.      JLL's parent, Jones Lang Lasalle Incorporated maintained excess commercial general liability insurance under ACE American Insurance Company ("ACE") Excess Commercial General Liability Policy No. XSL G71234228 effective November 15, 2019 to November 15, 2020 (the "ACE XS Policy").  JLL is a scheduled Named Insured under the ACE XS Policy, and the excess coverage afforded by that policy extends to Merck as a Named Insured.  A true and correct copy of the ACE XS Policy is appended at **Exhibit "G"**.  <u>See</u> ACE XS Policy at Broad Named Insured Endorsement.

52.     The ACE XS Policy attaches excess of an eroding $200,000 retention and all other insurance available to an insured.  <u>See</u> ACE XS Policy at Declarations, Retained Limit.

53.     JLL's parent, Jones Lang Lasalle, Inc., also maintained commercial umbrella liability insurance under AGLIC Commercial Umbrella Liability Policy No. AUC 5944289 11, effective November 15, 2019 to November 15, 2020, with limits of $25 Million per occurrence (the "AGLIC XS Policy").  A true and correct copy of the AGLIC XS Policy is appended at **Exhibit "H"**.

20

54. Indemnity coverage under the AGLIC XS Policy follows form to the ACE XS Policy, and attaches only upon the exhaustion of the ACE XS Policy and all other insurance:

SECTION I. COVERAGE

A. Coverage A - Excess Follow Form Liability Insurance

Under Coverage A, we will pay on behalf of the **insured** those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to Coverage A, this policy includes:

1. The terms and conditions of **underlying insurance** to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph 2. below; and

2. The terms and conditions that apply to Coverage A of this policy.
…

…

Other Insurance

If **other insurance** applies to damages that are also covered by this policy, this policy will apply excess of the other insurance.

AGLIC XS Policy at Commercial Umbrella Liability Policy Coverage Form U-U MB-103-C CW (03/10), Section I., Item A. and Section VI., Item A., ¶13.[1]

55. **Underlying insurance** is defined under the AGLIC XS Policy as:

**Underlying insurance** means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy. We will only be liable for amounts in excess of the Limits of Insurance shown in the Schedule of Underlying Insurance for any underlying insurance.

AGLIC XS Policy at Commercial Umbrella Liability Policy Coverage Form U-U MB-103-C CW (03/10), Section V., Item A., ¶4.

56. The ACE XS Policy is listed in the Schedule of Underlying Insurance to the AGLIC XS Policy. AGLIC XS Policy at Schedule of Underlying Insurance.

---

[1] The terms set forth in bold in the AGLIC XS Policy have the definitions ascribed to them in the AGLIC XS Policy.

57.    JLL and Merck are **insureds** under the AGLIC XS Policy when included as an insureds in **underlying insurance**.  AGLIC XS Policy at Commercial Umbrella Liability Policy Coverage Form U-U MB-103-C CW (03/10), Section V., Item B., ¶2.b.

58.    **Other insurance** as defined under the AGLIC XS Policy "means a policy of insurance providing coverage that this policy also provides," and "includes any type of self-insurance or other mechanisms by which an insured arranges for funding of legal liabilities." AGLIC XS Policy at Commercial Umbrella Liability Policy Coverage Form U-U MB-103-C CW (03/10), Section V., Item A., ¶4.

59.    The AGLIC XS Policy provides that AGLIC is subrogated to the rights of any insured against any other person or entity who is liable for payments advanced under the AGLIC XS Policy.  See AGLIC XS Policy, Commercial Umbrella Liability Policy Coverage Form U-U MB-103-C CW (03/10), Section VI., Item A., ¶17.a.

## CASE AND CONTROVERSY

### DEFENDANTS' WRONGFUL REFUSAL TO PROVIDE INSURANCE COVERAGE TO JLL AND MERCK FOR THE *VILLANOVA* LAWSUIT

60.    JLL and Merck tendered their defense and advanced a demand for indemnity to USF's insurers on August 10, 2020.  See JLL and Merck August 10, 2020 Notice of Claim ("By this letter, demand is made by JLL that US Facilities submit on JLL and Merck's behalf to all applicable insurance carriers for both additional insured protection …"), appended at **Exhibit "I"**.

61.    On November 10, 2020, Gemini refused to even acknowledge the tenders as additional insureds under the Gemini Policy.  See Gemini November 10, 2020 Correspondence, appended at **Exhibit "J"**.

62.     Gemini violated the provisions of the Pennsylvania Unfair Insurance Practices Act in that November 10, 2020 correspondence when it misrepresented to its insureds, JLL and Merck, that "[y]our email appears to be tendering this matter to U.S. Facilities based on Section 8, Indemnification of the contract."  Either Gemini or its designated claims handling service (at its behest) did not bother to read the August 10, 2020 Notice of Claim and tender, which specifically references a demand by JLL and Merck for defense and indemnity as additional insureds, or purposefully chose to violate 40 Pa. Stat. Ann. §1171.5(a)(10)(i)-(v) and (xiv).

63.     Regardless of the motive assigned to that particular conduct, Gemini breached its duty to defend, at a minimum, on that date and has no plausible excuse for that breach.

64.     After ignoring the tender by Merck and JLL for several more years, Gemini elected to compound that initial breach by offering a wholly baseless denial of additional insured coverage on January 16, 2024—some three and half years later.  See Gemini January 16, 2024 Correspondence, appended at **Exhibit "K"**.

65.     Remarkably, Gemini's January 16, 2024 correspondence acknowledges that the additional insured coverage extends to "bodily injury" caused in whole or in part by USF's acts or omissions, or the acts or omissions of those acting on its behalf (e.g., Crawford and Villanova), but then goes on to fabricate an entirely new condition precedent to coverage by suggesting a lawsuit brought by its Named Insured's employee must allege "negligence" by that Named Insured for additional insured coverage to apply.  *Id.*

66.     Here, Gemini's subterfuge cannot be accounted for by mere inadvertence in reading the  tender.  Gemini knew that the pleading filed by Villanova could not possibly advance a negligence claim against USF given the worker's compensation bar, 77 Pa. Stat. Ann. §481.  It also knew, or by the exercise of any diligence should have known, that the *Villanova*

Lawsuit's allegations established, beyond question, that the injury at issue may have been caused, in whole or in part, by USF's conduct (even though not named), and that the governing law required USF to defend JLL and Merck.  See e.g., *Ramara, Inc. v. Westfield Ins. Co*., 814 F.3d 660 (3d Cir. 2016); *Zurich Am. Ins. Co. v. Indian Harbor Ins. Co*., 235 F. Supp. 3d 690 (E.D. Pa. 2017).  And Gemini also knew that the terms of the Gemini Policy's additional insured insuring grant do not condition coverage on a negligence allegation being advanced against USF.  See, Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)).

67.     Gemini purposefully chose to misrepresent the terms of its policy, in violation 40 Pa. Stat. Ann.§1171.5(a)(10)(i), and in furtherance of its prior violations of 40 Pa. Stat. Ann. §1171.5(a)(10)(i)-(v) and (xiv); i.e., demonstrating a "course of practice" within the meaning of the statute.

68.     Fourteen (14) days later, Gemini retracted its "coverage disclaimer" and  agreed it has a duty to defend JLL and Merck under the Gemini Policy on a primary and non-contributing basis.  See Gemini January 30, 2024 Correspondence, appended at **Exhibit "L"** ("Based on the currently available information and documents, we agree to provide JLL and Merck with a defense of the [*Villanova*] Lawsuit, under a reservation of rights.").

69.     Here, Gemini acknowledged that JLL and Merck qualified as additional insureds under the Gemini Policy, a duty to defend attached under the Gemini Policy based on the allegations of the *Villanova* complaint and the circumstances of the accident, and that a duty to indemnify JLL and Merck under the Gemini Policy would follow where Villanova's  bodily injury was caused, in whole or in part, by USF's acts or omissions or the acts or omissions of those acting on its behalf.  *Id.*

70.    Despite acknowledging a duty to defend, Gemini <u>never</u> assumed defense of JLL and Merck, nor did Gemini indemnify any of the post tender defense costs incurred by JLL and Merck in the *Villanova* Lawsuit.

71.    The *Villanova* Lawsuit was scheduled a date certain trial on  April 22, 2024 in the Philadelphia Court of Common Pleas.  Jury selection was to commence on April 18, 2024.

72.    In advance of the trial, the claims against Gemini's and Allied's insureds, JLL and Merck, in the *Villanova* Lawsuit were aggressively mediated by Jerry Roscoe, Esq., with the mediation commencing on April 2, 2024 and continuing through resolution of the claims.

73.    Gemini was provided with advance notice of the mediation. <u>See</u> JLL and Merck March 12, 2024 Correspondence, appended at **Exhibit "M"**.

74.    Gemini was also provided with the specific facts discovered during the course of the litigation (<u>i.e.</u>, beyond the allegations in the *Villanova* complaint), which plainly placed at issue the acts or omissions of USF, or those acting on its behalf (inclusive of Villanova), as having caused—in whole or in part—the accident and the resulting bodily injury.  *Id.*

75.    Additional notices of the mediation and demands that Gemini participate and resolve the claims against JLL and Merck followed on March 18, 2024 and April 1, 2024.

76.    Gemini refused to contribute to any settlement of the *Villanova* Lawsuit on behalf of Merck and JLL in *Villanova* Lawsuit.

77.    Instead, Gemini took the position that the immunity provisions of the Pennsylvania Worker's Compensation Act precluded any finding of liability on the part of USF in the *Villanova* Lawsuit or any other lawsuit and, consequently, an indemnity obligation under the Gemini Policy could never be implicated.  <u>See</u> Gemini April 1, 2024 Correspondence, appended at **Exhibit "N"**.

78.     This position was, of course, nonsensical and has been rejected by decisional law throughout the country.[2]  To state the obvious, under Gemini's strained (and frankly absurd) view, additional insured coverage under an employer's policy is never implicated because the employer's conduct can never be adjudicated outside of the worker's compensation system (where fault is not an issue).

79.     Beyond epitomizing illusory coverage in this context, Gemini's position ignores the actual wording of the additional insured coverage provided by the Gemini Policy—which extends indemnity coverage where the bodily injury is caused, in whole or in part, by the acts or omissions of USF or those acting on its behalf (including Villanova).  There is no requirement in that insuring grant that USF's liability be "adjudicated" before an indemnity obligation attaches.  Rather, Gemini's indemnity obligation (and Allied's follow form indemnity obligation) attaches where USF's acts or omissions (or those acting on its behalf) are a cause, in whole or in part, of the bodily injury.

80.     But even assuming Gemini's untenable view that the "liability" of the "employer" must be "adjudicated" in an underlying tort suit (where that employer cannot be sued) had merit (it obviously does not), the "liability" of those acting on its behalf *would be* "adjudicated" in that

---

[2] For example, at least seven (7) Federal Circuit Courts have rejected Gemini's spurious argument that its coverage obligations are so limited, consistently holding that the "in whole or in part" language in the Gemini insuring grant means nothing more than that the employer (or its injured worker) is in the causal chain for the injury. See *First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc*., 660 Fed. Appx. 30, 30-34 (2nd Cir. Aug. 29, 2016) (Connecticut law); *Ramara, Inc. v. Westfield Ins. Co*., 814 F.3d 660, 674,76 (3rd Cir. 2016) (Pennsylvania law); *C Real Estate, LLC v. Certain Underwriters at Lloyd's*, 788 F.3d 375, 382-83 (4th Cir. 2015) (Maryland law); *Gilbane Building Co. v. Admiral Ins. Co*., 664 F.3d 589, 598 (5th Cir. 2011) (Texas law); *Commerce & Indus. Ins. Co. v. Century Ins. Co.*, 809 Fed. Appx. 311, 315-16 (6th Cir. April 30, 2020) (Alaska law); *Selective Ins. of South Carolina v. Target Corp*., 845 F.3d 263, 270-72 (7th Cir. 2017); *First Mercury Ins. Co. v. Cincinnati Ins. Co*., 882 F.3d 1289, 1302-03 (10th Cir. 2018) (New Mexico law).

underlying tort suit if tried.  <u>See</u> *Villanova* Lawsuit Verdict Sheet, filed by Villanova, appended at **Exhibit "O"**, at Jury Questions Nos. 5 and 6.

81.    Further, contrary to Gemini's erroneous contention, there is nothing in the Pennsylvania Worker's Compensation Act that precludes an insurer from "adjudicating" a factual cause of an injury in a separate declaratory judgment proceeding to determine another insurer's liability for the loss.

82.     In sum, Gemini's refusal to fund a settlement of the claims against its insureds in the *Villanova* Lawsuit had no conceivable basis under its policy, the facts, or the law.

83.    JLL and Merck, having been abandoned by Gemini, turned to their excess insurers, ACE and AGLIC, whose policies attach excess of the coverage afforded by the Gemini Policy, to negotiate an arm's length mediated settlement of the claims in the *Villanova* Lawsuit.

84.    Left with no choice but to drop down from their excess position following JLL's commitment to pay the balance of its $200,000 retention under the ACE XS Policy toward a settlement, ACE and AGLIC negotiated a mediated resolution of the claims against JLL and Merck in the *Villanova* Lawsuit for the sum of Two Million Five Hundred and Sixteen Thousand and Five Hundred Dollars ($2,516,500) (the "Settlement Payment").

85.    The mediated settlement that was brokered, independently, by neutral Mediator Roscoe was reasonable, and approved by counsel for Merck and JLL.

86.    JLL, ACE, and AGLIC thereafter funded in full the Settlement Payment, under a reservation of rights to recover those sums advanced from Gemini and Allied, and secured a full release of all claims in the *Villanova* Lawsuit against JLL and Merck.  A true and correct copy of the *Villanova* Lawsuit Release is appended at **Exhibit "P"**.

87.     The first $1 Million of the Settlement Payment should have been paid by Gemini as within the available primary and non-contributing limits of coverage afforded JLL and Merck under the Gemini Policy, as required by the USF Services Contract.

88.     Consequently, because Gemini refused to pay its $1 Million share of the Settlement Payment, AGLIC's share of the Settlement Payment was artificially (and wrongfully) increased by that same amount: $1 Million, over that which it would have paid had Gemini complied with its insuring obligations under the Gemini Policy.

89.     Hence, AGLIC sustained damages in the sum of $1 Million, plus interest, as a result of Gemini's breach of its insuring obligations under the Gemini Policy.

90.     Because Gemini refused to defend JLL and Merck, JLL was compelled to pay for the defense in the Villanova Lawsuit under its retention, causing it damages in the amount of those defense costs, plus interest.

91.     Gemini wrongfully refused to defend and indemnify JLL and Merck in the *Villanova* Lawsuit on a primary and non-contributing basis as required by the terms of the Gemini Policy and the insurance requirements in the USF Services Contract.

92.     Gemini's wrongful refusal to defend JLL and Merck and pay the post-tender defense costs incurred by JLL and Merck in the *Villanova* Lawsuit (particularly after belatedly admitting an obligation to do so) is a material, inexcusable, and unjustified breach of the Gemini Policy.

93.     Gemini's refusal to fund the first $1 Million of the Settlement Payment is a material, inexcusable, and unjustified breach of the Gemini Policy.

94.     As a consequence of Gemini's wrongful conduct, USF is in material breach of the insurance requirements under the USF Services Contract.

<u>COUNT I</u>
**DECLARATORY RELIEF AGAINST GEMINI**
**(Duty to Indemnify Defense Costs)**

95.     Plaintiffs incorporate by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

96.     The Gemini Policy provides primary commercial general liability insurance coverage which obligates Gemini to defend any qualifying "insured" against a claim for "bodily injury" caused by an "occurrence" which takes place during the policy period.  Gemini Policy at Commercial General Liability Coverage Form (CG 0001 (12/07)), Section I – Coverages, Coverage A, ¶1. Insuring Agreement.

97.     The Gemini Policy defines an "insured" so as to include those persons or entities with whom USF agreed by contract to add as an additional insured on its policy.  Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)), Schedule and Item A.

98.     The additional insured coverage afforded by the Gemini Policy extends liability coverage to such qualifying insureds for "bodily injury" caused, in whole or in part, by USF's acts or omissions, or the acts or omissions of those acting on USF's behalf in the performance of USF's ongoing operations for the additional insured.  Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)).

99.     Gemini's duty to defend an "insured" is not contingent upon an actual tort claim being advanced against USF, but rather applies whenever the allegations in the underlying pleading give rise to the possibility that a "bodily injury" arose out of USF's ongoing operations

performed for that insured and was caused, in whole or in part, by any act or omission by USF, or those working on its behalf, during the course of performing such operations.

100.    In the complaint filed in the *Villanova* Lawsuit, Villanova alleges that he sustained a "bodily injury" caused by an "occurrence," as those terms are defined in the Gemini Policy, which took place during the effective dates of the Gemini Policy.

101.    In the complaint filed in the *Villanova* Lawsuit, Villanova alleges he was acting within the course and scope of his employment for USF performing work for JLL and Merck at the time of the accident which is the subject of that lawsuit.

102.    USF was required by contract to name JLL and Merck as an "additional insureds" under the Gemini Policy, with such additional insured coverage afforded on a primary, non-contributory basis.  USF Services Contract at §7 and Exhibit "C" at ¶¶1.A and 2.

103.    JLL and Merck each qualify as an "insured" under the "Who Is An Insured" provisions of the Gemini Policy as amended by the Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)).

104.    The claims advanced against JLL and Merck in the *Villanova* Lawsuit address liability for bodily injury caused, in whole or in part by, USF's acts or omissions or the acts or omissions of those acting on its behalf, in the course of USF's ongoing operations for JLL and Merck under the USF Services Contract.

105.    The Gemini Policy affords primary commercial general liability coverage to JLL and Merck relative to the claims advanced against them in the *Villanova* Lawsuit.

106.    Gemini expressly admitted that the factual allegations in the operative complaint in the *Villanova* Lawsuit triggered additional insured coverage for JLL and Merck under the Gemini Policy.

107.    Gemini expressly admitted that it had a duty to defend JLL and Merck in the *Villanova* Lawsuit on a primary and non-contributory basis.

108.    Gemini has waived any right to contest its duty to defend JLL and Merck in the *Villanova* Lawsuit by knowingly and voluntarily admitting that the Gemini Policy affords a defense to JLL and Merck in the *Villanova* Lawsuit on a primary and non-contributing basis.

109.    All conditions precedent for the trigger of a primary defense obligation in favor of JLL and Merck under the Gemini Policy have been satisfied or otherwise waived by Gemini.

110.    JLL and Merck tendered their defense of the claims advanced in the Villanova *Lawsuit* to Gemini on August 10, 2020.

111.    Gemini failed to defend JLL and Merck or indemnify JLL and Merck for the defense costs they have incurred in the *Villanova* Lawsuit.

112.    JLL has paid all defense costs and expenses incurred by and on behalf of JLL and Merck in the *Villanova* Lawsuit.

113.    There exists a substantial, *bona fide*, actual and justiciable dispute regarding Gemini's duty to defend and indemnify defense costs JLL and Merck incurred in the *Villanova* Lawsuit under the Gemini Policy.

114.    This Court has the power to declare rights, status and other legal relations under a contract either before or after a breach thereof, and whether or not further relief is or could be claimed.  28 USCS §2201 *et seq*.

**WHEREFORE**, plaintiffs American Guarantee and Liability Insurance Company and Jones Lang LaSalle Americas, Inc. respectfully request that this Honorable Court enter:

(a)    An Order declaring that Gemini Insurance Company was obligated to defend Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al.*, Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064 on a primary and non-contributing basis under Gemini Insurance Company Policy No. VNGP001522;

(b)    An Order declaring that the retention payable by Jones Lang LaSalle Americas, Inc. under ACE American Insurance Company Excess Commercial General Liability Policy No. XSL G71234228 is excess to and non-contributing with, *inter alia*, the primary commercial general liability insurance coverage afforded to Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. under Gemini Insurance Company Policy No. VNGP001522 as regards to all defense costs and expenses incurred by or on behalf of Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al.*, Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064;

(c)    Judgment in favor of American Guarantee and Liability Insurance Company and Jones Lang LaSalle Americas, Inc. and against Gemini Insurance Company for all attorney's fees and costs incurred in this civil action to the fullest extent permitted under applicable law or Rule of Court; and

(d)    An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

## COUNT II
## BREACH OF CONTRACT AND CIVIL DAMAGES
## AGAINST GEMINI INSURANCE COMPANY
### (Defense Costs)

115.    Plaintiffs incorporate by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

116.    The Gemini Policy provides primary commercial general liability insurance coverage which obligated Gemini to defend JLL and Merck in the *Villanova* Lawsuit.

117.    JLL and Merck tendered their defense of the claims advanced in the Villanova Lawsuit to Gemini on August 10, 2020.

118. Gemini failed to defend JLL and Merck or indemnify JLL and Merck for the defense costs they have incurred in the *Villanova* Lawsuit.

119. Gemini breached the material terms of their insuring agreement with JLL and Merck by failing to defend JLL and Merck or indemnify defense costs incurred by JLL and Merck in the *Villanova* Lawsuit.

120. The breach of contract by Gemini is material and without justification.

121. As a direct and foreseeable consequence of Gemini's material breach, JLL was compelled to pay all defense costs and expenses incurred by and on behalf of JLL and Merck in the *Villanova* Lawsuit.

122. As a direct and foreseeable consequence of Gemini's material breach, JLL has incurred other consequential and foreseeable damages, including but not limited to the costs of bringing this action to compel Gemini to fulfill its contractual obligations under the Gemini Policy.

123. Gemini waived any right to contest its duty to defend JLL and Merck in the *Villanova* Lawsuit by knowingly and voluntarily admitting that the Gemini Policy affords a defense to JLL and Merck in the *Villanova* Lawsuit on a primary and non-contributing basis.

124. All conditions precedent for the trigger of a primary defense obligation in favor of JLL and Merck under the Gemini Policy have otherwise been satisfied or waived by Gemini.

125. Gemini is obligated to reimburse JLL for all defense costs and expenses incurred by and on behalf of JLL and Merck in the *Villanova* Lawsuit.

126. Gemini is obligated to pay all other consequential damages sustained by JLL as a result of Gemini's breach of contract.

**WHEREFORE**, plaintiffs American Guarantee and Liability Insurance Company and Jones Lang LaSalle Americas, Inc. respectfully request that this Honorable Court enter:

(a)    An Order declaring that Gemini Insurance Company is obligated to indemnify Jones Lang LaSalle Americas, Inc. for all costs and expenses incurred by Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in their defense of the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al*., Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064 under Gemini Insurance Company Policy No. VNGP001522;

(b)    An Order declaring that Gemini Insurance Company materially breached its defense obligations in favor of Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. under Gemini Insurance Company Policy No. VNGP001522;

(c)    Judgment against Gemini Insurance Company and in favor of Jones Lang LaSalle Americas, Inc. for all costs and expenses incurred by Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in their defense of the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al*., Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064, plus interests on those sums;

(d)    Judgment against Gemini Insurance Company and in favor of Jones Lang LaSalle Americas, Inc. for all consequential damages sustained by Jones Lang LaSalle Americas, Inc. as a result of Gemini Insurance Company's breach of its contractual obligations under Gemini Insurance Company Policy No. VNGP001522, plus interests on those sums;

(e)    Judgment in favor of Jones Lang LaSalle Americas, Inc. and against Gemini Insurance Company for all attorney's fees and costs incurred in this civil action to the fullest extent permitted by applicable law or Rule of Court; and

(f)    An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

**COUNT III**
**DECLARATORY RELIEF AGAINST GEMINI**
**(Duty to Indemnify the Settlement Payment)**

127.    Plaintiffs incorporate by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

128.    The Gemini Policy provides primary commercial general liability insurance coverage which obligates Gemini to indemnify sums any qualifying "insured" is legally

obligated to pay as damages because of "bodily injury" caused by an "occurrence" which takes place during the policy period.  Gemini Policy at Commercial General Liability Coverage Form (CG 0001 (12/07)), Section I – Coverages, Coverage A, ¶1. Insuring Agreement.

129.    The Gemini Policy defines an "insured" so as to include those persons or entities with whom USF agreed by contract to add as an additional insured on its policy.  Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)), Schedule and Item A.

130.    The additional insured coverage afforded by the Gemini Policy extends indemnity coverage to such qualifying insureds for "bodily injury" caused, in whole or in part, by USF's acts or omissions, or the acts or omissions of those acting on USF's behalf, in the performance of USF's ongoing operations for the additional insured.  Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)).

131.    Gemini's duty to indemnify is not contingent upon an actual tort claim being advanced against USF, but rather applies whenever the "bodily injury" arose out of USF's ongoing operations performed for that insured and was caused, in whole or in part, by any act or omission by USF, or those working on its behalf, during the course of performing such operations.

132.    The *Villanova* Lawsuit sought recovery of damages because of a "bodily injury" caused by an "occurrence," as those terms are defined in the Gemini Policy, which took place during the effective dates of the Gemini Policy.

133.    At the time of the accident and resulting "bodily injury" which is the subject of the damage claim in the *Villanova* Lawsuit, Villanova was acting within the course and scope of his employment for USF performing work for JLL and Merck.

134.    USF was required by contract to name JLL and Merck as an "additional insureds" under the Gemini Policy, with such additional insured coverage afforded on a primary, non-contributory basis.  USF Services Contract at §7 and Exhibit "C" at ¶¶1.A and 2.

135.    JLL and Merck each qualify as an "insured" under the "Who Is An Insured" provisions of the Gemini Policy as amended by the Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)).

136.    The claims advanced against JLL and Merck in the *Villanova* Lawsuit address liability for bodily injury caused, in whole or in part by, USF's acts or omissions or the acts or omissions of those acting on its behalf, in the course of USF's ongoing operations for JLL and Merck under the USF Services Contract.

137.    The Gemini Policy affords primary commercial general liability coverage to JLL and Merck relative to the claims advanced against them in the *Villanova* Lawsuit.

138.    Gemini expressly admitted that the factual allegations in the operative complaint in the *Villanova* Lawsuit triggered additional insured coverage for JLL and Merck under the Gemini Policy.

139.    Gemini expressly admitted that it had a duty to defend JLL and Merck in the *Villanova* Lawsuit on a primary and non-contributory basis.

140.    Gemini waived any right to contest its duty to defend JLL and Merck in the *Villanova* Lawsuit by knowingly and voluntarily admitting that the Gemini Policy affords a defense to JLL and Merck in the *Villanova* Lawsuit on a primary and non-contributing basis.

141.    JLL and Merck tendered their defense of the claims advanced in the *Villanova* Lawsuit to Gemini on August 10, 2020.

142.    All conditions precedent for the trigger of a primary defense obligation in favor of JLL and Merck under the Gemini Policy were otherwise satisfied and/or waived by Gemini.

143.    Gemini refused to defend JLL and Merck in the *Villanova* Lawsuit.

144.    As a consequence of Gemini's refusal to defend JLL and Merck in the *Villanova* Lawsuit, JLL assumed the defense of JLL and Merck in the *Villanova* Lawsuit consistent with its retention obligations under the ACE XS Policy.

145.    Gemini was placed on notice of the mediation of the claims against its insureds in the *Villanova* Lawsuit but refused to offer any sums at mediation to resolve those claims.

146.    Instead, Gemini say idly by and compelled JLL and Merck to look to their excess insurers, ACE and AGLIC, respectively, to settle the claims against them in the *Villanova* Lawsuit.

147.    The Gemini Policy affords primary indemnity coverage to JLL and Merck for the claims in asserted against them in the *Villanova* Lawsuit.

148.    The ACE XS Policy affords JLL and Merck indemnity coverage excess of JLL's eroding retention, and all other insurance available to JLL and Merck, including but not limited to the Gemini Policy.

149.     The AGLIC XS Policy affords JLL and Merck indemnity coverage excess of JLL's eroding retention under the ACE XS Policy, the limits of the ACE XS Policy, and all other insurance available to JLL and Merck, including but not limited to the Gemini Policy.

150.     JLL, ACE, and AGLIC reached a mediated settlement of the claims asserted against JLL and Merck in the *Villanova* Lawsuit.

151.     Gemini was on notice of the mediated settlement of the claims asserted against JLL and Merck in the *Villanova* Lawsuit.

152.     All conditions precedent for the trigger of a primary indemnification obligation in favor of JLL and Merck under the Gemini Policy were satisfied and/or waived by Gemini.

153.     Gemini refused to indemnify any portion of the mediated settlement of the claims asserted against JLL and Merck in the *Villanova* Lawsuit.

154.     Gemini's refusal to indemnify any portion of the mediated settlement of the claims asserted against JLL and Merck in the *Villanova* Lawsuit was a material breach of Gemini's insuring obligations under the Gemini Policy.

155.     As a consequence of Gemini's material breach of the Gemini Policy, JLL, ACE and AGLIC were compelled to pay the mediated Settlement Payment.

156.     Had the *Villanova* Lawsuit proceeded to trial, the issue of whether the acts or omissions of USF or those acting on its behalf, including but not limited to Villanova, were a cause, in whole or in part, of Villanova's injuries and damages would have been decided.

157.     The duty to indemnify follows the duty to defend where "settlements in the underlying suits . . . preclude such . . . factual determinations." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 766 (3d Cir. 1985).

158.    Further, where an insurer (here, Gemini) refuses to defend and the action is later settled with no trial, it is estopped from arguing that the settlement represented claims outside those covered under the policy.  *Liberty Mut. Ins. Co. v. Penn Nat'l Mut. Cas. Ins. Co*., 499 F. Supp. 3d 130, 142 (W.D. Pa. 2020), *aff'd*, No. 20-3468, 2021 U.S. App. LEXIS 34378 (3d Cir. Nov. 18, 2021) ("an insurer who breaches its obligation to defend is estopped from arguing that the settlement represented claims outside those covered under the policy because an insurer 'cannot stand aside while the underlying case proceeds and only after it is settled seek to dissect it'.") (citing *Tig Ins. Co. v. Nobel Learning Cmtys., Inc*., No. 01-4708, 2002 U.S. Dist. LEXIS 10870 at *17 (E.D. Pa. June 18, 2002)).

159.    Gemini is estopped from contesting its duty to indemnify the Settlement Payment.

160.    Under prevailing and established law, Gemini is obligated to indemnify the Settlement Payment up to and including the full amount of the $1 Million limit of the Gemini Policy, plus interest.

161.    In the alternative, the acts or omissions of USF or those acting on its behalf, including but not limited to Villanova, were a cause, in whole or in part, of Villanova's injuries and damages which were the subject of the mediated settlement.

162.    Consequently, Gemini is obligated to indemnify the Settlement Payment up to and including the full amount of the $1 Million limit of the Gemini Policy, plus interest.

163.    Gemini has refused to indemnify its share of the Settlement Payment despite an obligation to do so under the Gemini Policy and at law.

164.    There exists a substantial, *bona fide*, actual and justiciable dispute regarding Gemini's duty to indemnify the Settlement Payment under the Gemini Policy.

165.    This Court has the power to declare rights, status and other legal relations under a contract either before or after a breach thereof, and whether or not further relief is or could be claimed.  28 USCS §2201 *et seq.*

**WHEREFORE**, plaintiffs American Guarantee and Liability Insurance Company and Jones Lang LaSalle Americas, Inc. respectfully request that this Honorable Court enter:

(a)    An Order declaring that Gemini Insurance Company is obligated to indemnify the mediated settlement reached on behalf of Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al*., Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064 on a primary and non-contributing basis under Gemini Insurance Company Policy No. VNGP001522;

(b)    An Order declaring that any indemnity obligation under ACE American Insurance Company Excess Commercial General Liability Policy No. XSL G71234228 for the mediated settlement reached on behalf of Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al*., Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064 is excess to and non-contributing with, *inter alia*, the primary indemnity obligation relative to that settlement under Gemini Insurance Company Policy No. VNGP001522;

(c)    An Order declaring that any indemnity obligation under American Guarantee and Liability Insurance Company Commercial Umbrella Liability Policy No. AUC 5944289-11 for the mediated settlement reached on behalf of Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al*., Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064 is excess to and non-contributing with, *inter alia*, the primary indemnity obligation relative to that settlement under Gemini Insurance Company Policy No. VNGP001522;

(d)    Judgment against Gemini Insurance Company for all attorney's fees and costs incurred in this civil action to the fullest extent permitted by applicable law or Rule of Court; and

(e)    An order and/or judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

## COUNT IV
## BREACH OF CONTRACT AND CIVIL DAMAGES
## AGAINST GEMINI INSURANCE COMPANY
### (Settlement Payment)

166.    Plaintiffs incorporate by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

167.    The Gemini Policy provides primary commercial general liability insurance coverage which obligates Gemini to indemnify sums any qualifying "insured" is legally obligated to pay as damages because of "bodily injury" caused by an "occurrence" which takes place during the policy period.  Gemini Policy at Commercial General Liability Coverage Form (CG 0001 (12/07)), Section I – Coverages, Coverage A, ¶1. Insuring Agreement.

168.    The Gemini Policy defines an "insured" so as to include those persons or entities with whom USF agreed by contract to add as an additional insured on its policy.  Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)), Schedule and Item A.

169.    The additional insured coverage afforded by the Gemini Policy extends indemnity coverage to such qualifying insureds for "bodily injury" caused, in whole or in part, by USF's acts or omissions, or the acts or omissions of those acting on USF's behalf in the performance of USF's ongoing operations for the additional insured.  Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)).

170.    Gemini's duty to indemnify is not contingent upon an actual tort claim being advanced against USF, but rather applies whenever the "bodily injury" arose out of USF's ongoing operations performed for that insured and was caused, in whole or in part, by any act or

omission by USF, or those working on its behalf, during the course of performing such operations.

171.    The *Villanova* Lawsuit sought recovery of damages because of a "bodily injury" caused by an "occurrence," as those terms are defined in the Gemini Policy, which took place during the effective dates of the Gemini Policy.

172.    At the time of the accident and resulting "bodily injury" which is the subject of the damage claim in the *Villanova* Lawsuit, Villanova was acting within the course and scope of his employment for USF performing work for JLL and Merck.

173.    USF was required by contract to name JLL and Merck as an "additional insureds" under the Gemini Policy, with such additional insured coverage afforded on a primary, non-contributory basis.  USF Services Contract at §7 and Exhibit "C" at ¶¶1.A and 2.

174.    JLL and Merck each qualify as an "insured" under the "Who Is An Insured" provisions of the Gemini Policy as amended by the Gemini Policy at Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization Endorsement (CG 2010 (4/13)).

175.    The claims advanced against JLL and Merck in the *Villanova* Lawsuit address liability for bodily injury caused, in whole or in part by, USF's acts or omissions or the acts or omissions of those acting on its behalf, in the course of USF's ongoing operations for JLL and Merck under the USF Services Contract.

176.    The Gemini Policy affords primary commercial general liability coverage to JLL and Merck relative to the claims advanced against them in the *Villanova* Lawsuit.

177. Gemini expressly admitted that the factual allegations in the operative complaint in the *Villanova* Lawsuit triggered additional insured coverage for JLL and Merck under the Gemini Policy.

178. Gemini expressly admitted that it had a duty to defend JLL and Merck in the *Villanova* Lawsuit on a primary and non-contributory basis.

179. Gemini waived any right to contest its duty to defend JLL and Merck in the *Villanova* Lawsuit by knowingly and voluntarily admitting that the Gemini Policy affords a defense to JLL and Merck in the *Villanova* Lawsuit on a primary and non-contributing basis.

180. All conditions precedent for the trigger of a primary defense obligation in favor of JLL and Merck under the Gemini Policy were otherwise satisfied and/or waived by Gemini.

181. JLL and Merck tendered their defense of the claims advanced in the *Villanova* Lawsuit to Gemini on August 10, 2020.

182. Gemini refused to defend JLL and Merck in the *Villanova* Lawsuit.

183. As a consequence of Gemini's refusal to defend JLL and Merck in the *Villanova* Lawsuit, JLL assumed the defense of JLL and Merck in the *Villanova* Lawsuit consistent with its retention obligations under the ACE XS Policy.

184. Gemini was placed on notice of the mediation of the claims against its insureds in the *Villanova* Lawsuit but refused to offer any sums at mediation to resolve those claims.

185. Instead, Gemini say idly by and compelled JLL and Merck to look to their excess insurers, ACE and AGLIC, respectively, to settle the claims against them in the *Villanova* Lawsuit.

186. The Gemini Policy affords primary indemnity coverage to JLL and Merck for the claims in asserted against them in the *Villanova* Lawsuit.

187.    The ACE XS Policy affords JLL and Merck indemnity coverage excess of JLL's eroding retention, and all other insurance available to JLL and Merck, including but not limited to the Gemini Policy.

188.    The AGLIC XS Policy affords JLL and Merck indemnity coverage excess of JLL's eroding retention under the ACE XS Policy, the limits of the ACE XS Policy, and all other insurance available to JLL and Merck, including but not limited to the Gemini Policy.

189.    JLL, ACE, and AGLIC reached a mediated settlement of the claims asserted against JLL and Merck in the *Villanova* Lawsuit.

190.    Gemini was on notice of the mediated settlement of the claims asserted against JLL and Merck in the *Villanova* Lawsuit.

191.    All conditions precedent for the trigger of a primary indemnification obligation in favor of JLL and Merck under the Gemini Policy were satisfied and/or waived by Gemini.

192.    Gemini refused to indemnify any portion of the mediated settlement of the claims asserted against JLL and Merck in the *Villanova* Lawsuit.

193.    Gemini's refusal to indemnify any portion of the mediated settlement of the claims asserted against JLL and Merck in the *Villanova* Lawsuit was a material breach of Gemini's insuring obligations under the Gemini Policy.

194.    As a consequence of Gemini's material breach of the Gemini Policy, JLL, ACE and AGLIC were compelled to pay the mediated Settlement Payment.

195.    Had the *Villanova* Lawsuit proceeded to trial, the issue of whether the acts or omissions of USF or those acting on its behalf, including but not limited to Villanova, were a cause, in whole or in part, of Villanova's injuries and damages would have been decided.

196.    The duty to indemnify follows the duty to defend where a settlement in the underlying suit precludes such factual determinations. *Pacific Indem. Co. v. Linn*, supra, 766 F.2d at 766.

197.    Further, where an insurer (here, Gemini) refuses to defend and the action is later settled with no trial, it is estopped from arguing that the settlement represented claims outside those covered under the policy.  *Liberty Mut. Ins. Co. v. Penn Nat'l Mut. Cas. Ins. Co*., supra, 499 F. Supp. 3d at 142, *aff'd*, No. 20-3468, 2021 U.S. App. LEXIS 34378 (3d Cir. Nov. 18, 2021) ("an insurer who breaches its obligation to defend is estopped from arguing that the settlement represented claims outside those covered under the policy because an insurer 'cannot stand aside while the underlying case proceeds and only after it is settled seek to dissect it'.") (citing *Tig Ins. Co. v. Nobel Learning Cmtys., Inc*., supra, 2002 U.S. Dist. LEXIS 10870 at *17)).

198.    Gemini is estopped from contesting its duty to indemnify the Settlement Payment.

199.    Under prevailing and established law, Gemini is obligated to indemnify the Settlement Payment up to and including the full amount of the $1 Million limit of the Gemini Policy, plus interest.

200.    In the alternative, the acts or omissions of USF or those acting on its behalf, including but not limited to Villanova, were a cause, in whole or in part, of Villanova's injuries and damages which were the subject of the mediated settlement.

201.     Consequently, Gemini is obligated to indemnify the Settlement Payment up to and including the full amount of the $1 Million limit of the Gemini Policy, plus interest.

202.    Gemini has refused to indemnify its share of the Settlement Payment despite an obligation to do so under the Gemini Policy and at law.

203.    Gemini has breached the material terms of their insuring agreement with JLL and Merck by refusing to indemnify the Settlement Amount.

204.    The breach of contract by Gemini is material and without justification.

205.    As a direct and foreseeable consequence of Gemini's material breach, JLL, ACE and AGLIC were compelled to pay the Settlement Payment.

206.    The first $1 Million of the Settlement Payment should have been paid by Gemini as within the available primary and non-contributing limits of coverage afforded JLL and Merck under the Gemini Policy, as required by the USF Services Contract.

207.    Because Gemini refused to pay its $1 Million share of the Settlement Payment, AGLIC's share of the Settlement Payment was artificially (and wrongfully) increased by that same amount: $1 Million, over that which it would have paid had Gemini complied with its insuring obligations under the Gemini Policy.

208.    Hence, AGLIC sustained damages in the sum of $1 Million, plus interest, as a result of Gemini's breach of its insuring obligations under the Gemini Policy.

209.    AGLIC is equitably and legally subrogated to JLL's rights and remedies against Gemini.

210.    As the equitable or legal subrogee of JLL and Merck, AGLIC maintains the right to enforce Gemini's obligation to afford primary and non-contributing insurance coverage for the Settlement Payment advanced.

211.    Gemini is obligated to reimburse AGLIC the sum of $1 Million plus accrued interest.

212.    As a direct and foreseeable consequence of Gemini's material breach, JLL and AGLIC have incurred other consequential and foreseeable damages, including but not limited to

the costs of bringing this action to compel Gemini to fulfill its contractual obligations under the

Gemini Policy.

**WHEREFORE**, plaintiffs American Guarantee and Liability Insurance Company and

Jones Lang LaSalle Americas, Inc. respectfully request that this Honorable Court enter:

(a)     An Order declaring that Gemini Insurance Company is obligated to indemnify the
        mediated settlement reached on behalf of Jones Lang LaSalle Americas, Inc. and Merck,
        Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle
        Americas, Inc. et al*., Philadelphia County Court of Common Pleas, November Term,
        2021 No. 01064 on a primary and non-contributing basis under Gemini Insurance
        Company Policy No. VNGP001522;

(b)     An Order declaring that Gemini Insurance Company materially breached its indemnity
        obligations in favor of Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme
        Corp. under Gemini Insurance Company Policy No. VNGP001522;

(c)     Judgment against Gemini Insurance Company for the sum of $1 Million plus interest;

(d)     Judgment against Gemini Insurance Company for all attorney's fees and costs incurred in
        this civil action to the fullest extent permitted by applicable law or Rule of Court; and

(e)     An order and/or judgment for such other or alternative relief consistent with the claims
        and causes asserted in this Complaint.

## COUNT V
## BREACH OF CONTRACT, CIVIL DAMAGES AND DECLARATORY RELIEF
## AGAINST U.S. FACILITIES, INC.
### (Alternative Relief)

213.    Plaintiffs incorporate by reference the foregoing allegations of this Complaint as

if the same were set forth herein at length.

214.    The USF Services Contract was formed on June 15, 2018 for the benefit of Merck

(the "Owner") by JLL (the "Manager") and USF (the "Service Contractor"), and addresses

contract services to be performed by USF at various Merck facilities through December 31,

2019, including Merck's facilities in North Wales, where the underlying accident occurred.  See

USF Services Contract (Ex. "B") at recitals, Section 1, and Exhibit "A".

215.    The USF Services Contract required USF to procure and maintain additional insured coverage in favor of Merck and JL on a primary and noncontributing basis with any insurance available to Merck and JLL including commercial general liability insurance, with limits not less than $1 Million per occurrence.  USF Services Contract at Section 7 and Exhibit C.

216.    The required additional insured coverage under the USF Services Contract is, among other things, designed to afford Merck and JLL with a defense from any claim or lawsuit arising out of work USF performs at a Merck facility, and to provide indemnity to Merck and JLL for any settlement or judgment in such a suit.

217.    In the *Villanova* Lawsuit, Villanova and his wife advance claims against JLL and Merck for bodily injury and damages arising out of USF's work under the USF Services Contract.

218.    USF's commercial general liability insurer, Gemini, has refused to defend or indemnify defense costs incurred by JLL and Merck in the *Villanova* Lawsuit.

219.    USF's commercial general liability insurer, Gemini, has denied that it affords indemnity coverage to JLL and Merck in the *Villanova* Lawsuit, and has refused to indemnify the Settlement Amount paid to settle the claims against JLL and Merck in the *Villanova* Lawsuit.

220.    If Gemini is successful in its denial of insurance coverage in favor of JLL and Merck in the *Villanova* Lawsuit, then USF is in material and unjustified breach of its contractual obligations, and is deemed the insurer of JLL and Merck under the *Trumbull* Doctrine. *Wilkinsburg v. Trumbull-Denton Joint Venture*, 390 Pa. Super. 580 (1990).

221.    JLL has expended significant amounts of money to defend JLL and Merck in the *Villanova* Lawsuit.

222.    Absent reimbursement by Gemini, in full and with interest, of all sums JLL has expended to defend JLL and Merck in the *Villanova* Lawsuit, USF is liable to JLL for those sums plus interest.

223.    Because of Gemini's refusal to indemnify the Settlement Payment, AGLIC's share of the Settlement Payment was artificially (and wrongfully) increased by that same amount: $1 Million, over that which it would have paid had Gemini complied with its insuring obligations under the Gemini Policy.

224.    Hence, AGLIC sustained damages in the sum of $1 Million, plus interest, as a result of Gemini's breach of its insuring obligations under the Gemini Policy.

225.    AGLIC is equitably and legally subrogated to JLL's rights and remedies against USF under the USF Services Contract and the Trumbull Doctrine.

226.    As the equitable or legal subrogee of JLL and Merck, AGLIC maintains the right to enforce USF's contractual obligation to afford primary and non-contributing insurance coverage for all loss in connection with the Villanova Lawsuit, including but not limited to the Settlement Payment advanced.

227.    Absent reimbursement by Gemini, in full and with interest, of the sum of $1 Million plus interest, USF is liable to AGLIC for that sum plus interest.

**WHEREFORE**, in the alternative, plaintiffs American Guarantee and Liability Insurance Company and Jones Lang LaSalle Americas, Inc. respectfully request that this Honorable Court enter:

(a)    An Order declaring that U.S. Facilities, Inc. is obligated to reimburse all defense costs incurred by or on behalf of Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al.*, Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064, plus interest on those sums;

(b)    An Order declaring that U.S. Facilities, Inc. is obligated to reimburse the sum of $1,000,000 paid to settle the claims against Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al.*, Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064, plus interest on those sums;

(c)    Judgment against U.S. Facilities, Inc. for all defense costs incurred by or on behalf of Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al.*, Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064, plus interest on those sums;

(d)    Judgment against U.S. Facilities, Inc. for the sum of $1,000,000 paid to settle the claims against Jones Lang LaSalle Americas, Inc. and Merck, Sharp & Dohme Corp. in the civil action styled *Villanova v. Jones Lang LaSalle Americas, Inc. et al.*, Philadelphia County Court of Common Pleas, November Term, 2021 No. 01064, plus interest on those sums; and

(e)    An Order or Judgment for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

Respectfully Submitted,

By: /s/ Louis A. Bové
LOUIS A. BOVÉ, ESQUIRE
PA BAR I.D. NO. 53071
**BODELL BOVE, LLC**
1845 Walnut Street, 11th Fl., Suite 1100
Philadelphia, PA 19103
Tel: (215) 864-6600
Facsimile: (215) 864-6610
lbove@bodellbove.com
*Attorneys for American Guarantee and Liability Insurance Company, Jones Lang Lasalle Americas, Inc., and Merck Sharp & Dohme Corp.*

Date: July 30, 2025